𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
BEAUFORT DIVISION

| | | |
|---|---|---|
| Mack Neil Myers, #241427, | ) | |
| | ) | Civil Action No. 9:07-1131-HMH-GCK |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Jon Ozmint, Director of SCDC, | ) | |
| Warden Richard Bazzel, | ) | |
| Mr. Olson, Food Service Director, and | ) | |
| Nurse Ms. Ravist, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I. INTRODUCTION

The Plaintiff, Neil Mack Myers ("Myers" or "Plaintiff"), was incarcerated in the South

Carolina Department of Correction's Perry Correctional Institution ("Perry") at the time of the

incident leading to this action. He has filed this action against the above-named Defendants, Jon

Ozmint, Director of SCDC ("Director Ozmint"), Perry's Warden Richard Bazzel ("Warden

Bazzel"), Mr. Olson, Food Service Director ("Mr. Olson"), and Nurse Ms. Ravist, ("Nurse

Ravist"), alleging he was subjected to cruel and unusual punishment, and deliberate indifference

to his serious medical needs, in violation of the Eighth Amendment.

This case was automatically referred to the undersigned United States Magistrate Judge

for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections

636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Defendants

have filed a motion to dismiss the case pursuant to Rule 4 and Rules 12(b)(2), (4) and (5) of the

Federal Rules of Civil Procedure [9] and also have filed a motion for summary judgment.  [66]

Also pending before this court are the Plaintiff's motion for injunctive relief [19]; the Plaintiff's

motion for a physical and mental examination [20]; the Plaintiff's motion for summary judgment

[21]; the Plaintiff's motion to have defendants restrained from handling legal mail [39]; the

Plaintiff's motion to compel [63]; and the Plaintiff's motion to amend/correct.  [64]  As the

motions for summary judgment are dispositive motions, this Report and Recommendation is

entered for review by the District Court.

## II.  THE *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction.

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976);

*Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978);

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970

(1978).  Under established local procedure in this judicial district, a careful review has been

made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism

and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.

This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504

U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S.

519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en

banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.

*Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se*

complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction

afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a

valid claim on which the plaintiff could prevail, it should do so, but a district court may not

rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128

(10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him

(*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely

presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert.*

*denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean

that the court can ignore a clear failure in the pleading to allege facts which set forth a claim

currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp.

2d 594 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th

Cir.1990).  Such is the case with the present complaint.

### III.  BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff alleges that on January 14, 2006, he bit into a piece of metal in his coleslaw

at lunch.  Plaintiff states that the "sharp object" in his coleslaw caused a crack in his bottom right

wisdom tooth and cut the bottom and top of his gum, which caused his gums to bleed heavily.

Plaintiff called a Sergeant over and showed him a ½ inch piece of metal which had been in his

coleslaw and showed him that his mouth was bleeding.  The Plaintiff also asked the Sergeant to

call medical because he was in "excruciating pain."  The Sergeant called a Lieutenant over, who

saw the piece of metal on the Plaintiff's tray.  ([1] at ¶¶ 1-2)  About two hours later, the Plaintiff

was seen by Nurse Ravist, who told him to rinse his mouth out and take ibuprofen until January

17, at which time she would make sure the dentist saw him on an emergency call.  ([1] at ¶ 3)

On the day of the incident (January 14, 2006), the Plaintiff filed a Step One grievance and sent an affidavit, along with the piece of metal, to SCDC's general counsel.  ([1] at ¶ 4)  On February 22, 2006, the Plaintiff's Step One grievance was denied.  ([1] at ¶ 6)

Plaintiff alleges he did not receive any medical treatment for his tooth, and on March 15, 2006, he was transferred to Lieber CI, where he began to submit "countless" requests for medical treatment.  ([1] at ¶ 8)  Meanwhile, the Plaintiff filed a Step Two grievance on April 6, 2006, which was denied on May 17, 2006.  ([1] at ¶¶ 6)[1]  The Plaintiff finally was seen by a dentist on May 23, 2006, at which time he still was in pain; at that appointment, the dentist told him he would have to have a "painful surgery" in about three weeks to have his wisdom tooth cut out. ([1] at ¶¶ 9-10)

On February 5, 2007, the Plaintiff filed this action in the Greenville County Court of Common Pleas against the Defendants, alleging that he was refused adequate medical care for his injuries, which eventually caused him to undergo oral surgery.  The Plaintiff alleged the Defendants acted in violation of the Eighth Amendment's prohibition against cruel and unusual punishment by denying him prompt dental treatment, and acted with deliberate indifference.  The complaint also alleged state law causes of action for negligence.  [1]

---

[1]    The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  *See also Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (an inmate must exhaust "such administrative remedies as are available" before suing over prison conditions). Exhaustion must occur prior to the filing of the lawsuit or it must be dismissed.  *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005).  In the present case, the Plaintiff properly exhausted his administrative remedies prior to filing suit.

On April 25, 2007, the Defendants filed a Notice of Removal of the action with the clerk of court for the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. §§ 1441 and 1446, stating that they had been served on March 26, 2007.[2]  Also on April 25, 2007, the Defendants filed an answer to the complaint in the United States District Court.  [3]  Although the Defendants raised a number of affirmative defenses, they did **not** allege in their answer the affirmative defenses of insufficiency of process upon them, insufficiency of service of process upon them, or lack of jurisdiction over them.  [3]

On May 2, 2007, the undersigned United States Magistrate Judge issued an Order which explained to the Plaintiff that his action had been removed to federal court and informed the Plaintiff of his obligation to keep the Clerk advised of his address.  [8]  On May 3, 2007, the Defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 4 and 12(b)(2),(4), and (5) for lack of proper service.  [9-1]  In the memorandum in support of their motion, the Defendants set forth the following in support of their argument that the Plaintiff had failed to properly effect service:

> [T]he Plaintiff's purported service on February 26, 2007 is not proper service to and/or upon the Defendants in this case.  Pursuant to Rule, [sic] the Plaintiff is required to serve the Defendants personally or by leaving copies at the individual's dwelling, house, or usual place of abode, or upon an agent authorized to receive service of process.  The Plaintiff's purported service on Florence Mauney at Perry Correctional Institution on February 26, 2007 is therefore defective.  Accordingly, the within action should be dismissed.  [9-2]

Also on May 3, 2007, the Defendants filed an Amended Answer, which was identical to the answer with respect to the first fourteen defenses initially asserted, but added:  (1) that the

---

[2]        *See* Notice of Removal [1] at pp. 1-2.

court lacked jurisdiction of the parties and the Plaintiff had failed to properly serve the Defendants pursuant to Fed.R.Civ.P. 4; and (2) that Rules 12(b)(2), (4) and (5) acted as a bar and/or a defense to the Plaintiff's complaint.  [10]

On May 7, 2007, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the opportunity to respond to the Defendants' motion.  [11]  Thereafter, on May 14, 2007, the Plaintiff filed his response in opposition to the Defendant's motion to dismiss [13], as well as a motion for injunctive relief relating to use of the Lieber law library [19] and a motion for a physical and mental examination to determine the extent of his injuries.  [20]  On May 18, 2007, the Plaintiff filed a motion for summary judgment with respect to his claims of inadequate medical treatment, appearing to argue that summary judgment by default should be entered against the Defendants.  [21]  On June 18, 2007, the Plaintiff filed a motion to have the Defendants restrained from handling his legal mail.  [39]  On August 1, 2007, the Plaintiff filed a motion to compel production of certain discovery responses.  [63]  Finally, on August 17, 2007, the Plaintiff filed a motion to amend his complaint to add certain exhibits to it.  [64]  On August 24, 2007, the Defendants filed a motion for summary judgment [66] and the Plaintiff filed his response on September 6, 2007.  [69]

## IV  DISCUSSION OF THE PENDING MOTIONS

### A.  The Defendants' Motion to Dismiss [9]

As stated above, the Defendants stated in their notice of removal that they had been served on March 26, 2007.[3]  However, in their motion to dismiss [9], the Defendants contend

---

[3]        *See* Notice of Removal [1] at pp. 1-2.

that the Plaintiff failed to properly serve the Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.[4]  However, because this action was originally filed in state court, service of the Plaintiff's summons and complaint were required to be made in accordance with Rule 4 of the South Carolina Rules of Civil Procedure.  *See, e.g., Sanders v. SCDC*, 2004 WL 2944083 at *2 (D.S.C. 2004) (Catoe, M.J.).

Regardless of whether the Plaintiff successfully served the Defendants pursuant to S.C.R.C.P. 4, it appears to the court that the Defendants, through counsel, have waived any defenses associated with service.  The Defendants filed a notice of removal on the action from state court on April 25, 2007 [1], and filed an answer to the complaint in federal court on April 25, 2007 [3].  Significantly, however, the Defendants' answer failed to assert the affirmative defenses of insufficiency of process upon them, insufficiency of service of process upon them, and lack of jurisdiction over them, pursuant to Federal Rules 12(b)(2), 12(b)(4), and 12(b)(5), respectively.  (*Compare* answer [3] *with* amended answer [10])

Of course, the defense of insufficiency of process or of service of process is waived unless asserted in answer or Rule 12 motion.  *See, e.g., U.S. v. Borromeo*, 945 F.2d 750, 753 (4th

---

[4]    The Defendants argue that pursuant to Rule 4, the Plaintiff is required to serve the Defendants personally or by leaving copies at the individual's dwelling, house, or usual place of abode, or upon an agent authorized to receive service of process.  The Defendants contend that the Plaintiff's purported service on Florence Mauney at Perry Correctional Institution on February 26, 2007 is defective, and the Plaintiff's action should be dismissed The Defendants have attached to their Memorandum correspondence from the Plaintiff to Ms. Mauney requesting that she deliver the pleadings to the Defendants for him.  The Defendants argue that such letter confirms that, on this date, the Plaintiff did not effectuate lawful or proper service of process upon any Defendants.

Cir. 1991), *Cf.* Fed.R.Civ.P. 12(h)(1).[5]  Likewise, it is well-settled that personal jurisdiction is waived absent timely objection.  *Porsche Cars North America, Inc. v. Porsche.net*, 302 F.3d 248, 256 (4th Cir. 2002), *citing*  Fed.R.Civ.P. 12(b)(2), 12(h) (2002); *Rector v. Approved Fed. Sav. Banks*, 265 F.3d 248, 253 n. 2 (4th Cir. 2001); 5C Fed. Prac. & Proc. Civ. 3d. § 1360 (citing cases).

Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction are technically untimely where they postdate the filing of an answer.  *Henderson v. Gordineer*, 2007 WL 840273 at *11 (D.S.C. March 14, 2007) (TLW-JRM), *citing E-Z Bowz, L.L.C. v. Professional Prod. Research Co., Inc.*, No. 00 Civ. 8670, 2003 WL 22064259, at *4 n. 2 (S.D.N.Y. Sept. 05, 2003); *and Saldanha v. Baidyaroy*, No. 91 Civ. 6413, 1992 WL 147669, at *2-3 (S.D.N.Y. June 15, 1992).  In the present case, the Defendants moved for Rule 12(b)(2) dismissal [9] after serving their answer.  [3]  Although their motion would seem facially untimely, the undersigned is aware that federal courts will generally make an exception to the above rule, and deem a Rule 12(b)(2) motion timely, **if** the defendant/movant's previously-filed answer expressly includes the lack of personal jurisdiction as an affirmative defense.  *Henderson v. Gordineer*, 2007 WL 840273 at *11; *see also Allianz Ins. Co. v. Otero*, 2003 WL 262335, at *3 (S.D.N.Y. Jan. 30, 2003) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1361, at 444-46 (2d. ed.1990); *and Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64

---

[5]      Rule 12(h) states in pertinent part:
                Waiver or Preservation of Certain Defenses.

                (1) A defense of lack of jurisdiction over the person, improper venue, <u>insufficiency of process, or insufficiency of service of process</u> is waived  . . .if it is neither made by motion under this rule nor included in a responsive pleading[.]

F.Supp.2d 448, 449 n. 1 (E.D.Pa. 1999)).  In the present case, however, the Defendants' initial

answer [3] failed to raise as affirmative defense timely service under Rule 4(m), and

insufficiency of process, insufficiency of service of process, and lack of jurisdiction, pursuant to

Rules 12(b)(2), 12(b)(4), and 12(b)(5).  Although the Defendants later filed an Amended Answer

which asserted these affirmative defenses, this does not save the day for the Defendants.

Because the Defendants failed to assert these affirmative defenses in their answer, the

Defendants have waived these defenses.  Accordingly, the Defendants' motion to dismiss [9]

should be denied.

### B.  The Plaintiff's motion for injunctive relief [19]

Plaintiff seeks injunctive relief from the court for the following reasons:

> [T]he Defendants are refuseing [sic] to provide the Plaintiff with legal materials and access to legal book[s] from a legal book store also this law library at Lieber Corr. Inst. is very inadequate the law books are not update[d], and it takes two weeks to fill your law library request.  Im asking to have access to the courts Monday-Friday meaning L.C.I.  Let me order any legal materials I need form the outside legal book store.  And to receive legal supplies on a weekly basis under *Kocaya v. Kocaya*, S.C. 552 S.E.2d 765 (S.C. App. 2001).  [19]

This Court construes the Plaintiff's motion as a Motion under Federal Rule of Civil

Procedure 65(a) for a preliminary injunction.  A preliminary injunction is an extraordinary

remedy to be granted only if the moving party clearly establishes entitlement to the relief sought.

Fed.R.Civ.P. 65; *Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus., Inc.*, 889

F.2d 524, 526 (4th Cir. 1989); *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495,

499 (4th Cir. 1981).  In deciding whether to issue a preliminary injunction, a court must consider

and balance four factors:  (1) the plaintiff's likelihood of success in the underlying dispute

between the parties; (2) whether the plaintiff will suffer irreparable injury if the interim relief is denied; (3) the injury to defendant if an injunction is issued; and (4) the public interest.  *N.C. State Ports Auth. v. Dart Containerline Co., Ltd.*, 592 F.2d 749 (4th Cir. 1979); *see also Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977); *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119 (4th Cir. 1977).  The two most important factors are probable irreparable injury to the plaintiff if the relief is not granted and the likelihood of harm to the defendant if the injunction is granted.  *State Ports Auth.*, 592 F .2d at 750.

In this instance, it is not necessary for the Court to address the underlying issue of the alleged inadequacy of the Lieber law library, and make a recommendation as to whether an injunction should issue.  On July 10, 2007, the Plaintiff filed a notice of change of address with the court, indicating that he had been transferred from Lieber to Lee Correctional Institution. [46]  Because the Plaintiff has been transferred from Lieber, Plaintiff's claims are moot.  *See, e.g., Scurry v. Middleton*, 2007 WL 1068248 at *3 (D.S.C. April 2, 2007) (MBS-BM) (upon the plaintiff's release from the detention center, the plaintiff's request for injunctive and/or declaratory relief was moot); *citing Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); *Taylors v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (holding that prisoner's transfer mooted a request for declaratory and injunctive relief); *cf. Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Buie v. Jones*, 717 F.2d 925, 927-929 (4th Cir. 1983).  Based on the foregoing, it is

recommended that Plaintiff's Motion for injunctive relief [19] should be denied.

### C. The Plaintiff's motion to have the Defendants restrained from handling legal mail [39]

On June 18, 2007, the Plaintiff filed a motion to have the Defendants restrained from handling his legal mail. In support of that motion, which the court construes as a motion for a temporary restraining order pursuant Fed.R.Civ.P. 65, the Plaintiff alleged that certain prison officials at Lieber were retaliating against the Plaintiff for filing a grievance against them for mishandling the Plaintiff's legal mail. [39] The Plaintiff further alleged that on June 12, 2007, Corporal Smith appeared at the Plaintiff's cell with an envelope from the Defendant's counsel; the Plaintiff alleges that Corporal Smith had already opened the envelope and was removing items from it, which the Plaintiff claims was in violation of SCDC policy. [39; 40] The Plaintiff asked Corporal Smith to contact one of the two mailroom supervisors; the Plaintiff contends that Corporal Smith refused to call anyone. [39] The Plaintiff refused to sign for the envelope from Defendants' counsel. [40] The Plaintiff has asked the Court to restrain certain persons from opening his legal mail, and alleges irreparable harm if the court does not issue a temporary restraining order. [39]

On July 3, 2007, the Defendants responded to the Plaintiff's motion for a temporary restraining order, claiming that prison officials are permitted, pursuant to SCDC policies, to inspect all mail, and that the Plaintiff failed to show any irreparable injury. [42] As with the foregoing issue, it is not necessary for the Court to address the issue of the inspection of the Plaintiff's mail in this instance, because the Plaintiff was transferred from Lieber to Lee Correctional Institution on July 10, 2007, shortly after he filed his motion regarding the handling of his legal mail. [46] The Plaintiff's motion with respect to his legal mail sought to restrain the

Defendants (employees of Lieber) and other Lieber officers.  Because the Plaintiff has been

transferred from Lieber, this claim is moot.  *See, e.g., Scurry v. Middleton*, 2007 WL 1068248 at

*3 (D.S.C. April 2, 2007) (citations omitted).

### D.  Plaintiff's motion for a physical and mental examination [20]

Next, the court will address the Plaintiff's motion which requests that he be examined by

a certified physician and a certified psychologist who are not associated with Lieber, in order to

determine the extent of the Plaintiff's pain and suffering.  [20]

The law is clear that inmates must receive medical care while in prison.  *Estelle v.*

*Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Indeed, the Eighth Amendment

requires that prisoners be provided with a certain minimum level of medical treatment.

However, it does not guarantee to a prisoner the treatment of his choice.  *Jackson v. Fair*, 846

F.2d 811, 817-18 (1st Cir. 1988) (holding that transferring a prisoner from one facility to another

does not violate the Eighth Amendment because "the Constitution . . . does not guarantee to a

prisoner the treatment of his choice"); *see also Choice v. Blackwell*, 2002 WL 32079466, at * 7

(D.S.C. Mar. 29, 2002) ("although the provision of medical care by prison officials is not

discretionary, the type and amount of medical treatment is discretionary."); *Brownlow v. Chavez*,

871 F.Supp. 1061, 1064 (S.D.Ind. 1994) ("The Eighth Amendment does not guarantee a

prisoner's choice of a physician, a mode of treatment or a place of treatment, nor does or could it

guarantee a particular outcome or level of comfort in the face of physical maladies.") (internal

citations omitted); *Calloway v. Contra Costa County Jail Correctional Officers*, No. C 01-2689

SBA, 2007 WL 134581, at *31 (N.D.Cal. Jan.16, 2007) (rejecting "the proposition that a

prisoner has an Eighth Amendment right to receive treatment in the location or with the provider

of his choice").  The Plaintiff has no constitutional right to a physical or mental examination conducted by an "outside" physician or psychologist, and therefore it is recommended that his motion for a physical and mental examination [20] should be denied.

### E.  The Plaintiff's Motion to Compel [63]

On August 1, 2007, the Plaintiff filed a motion to compel the Defendants to answer certain interrogatories.  [63]  After a careful review of the Plaintiff's motion to compel and the Defendants' responses filed with the court on July 17, 2007 [51], the court concludes that the Defendants have fully responded to the Plaintiff's interrogatories, as well as the Plaintiff's requests for production.  In addition, the Defendants submitted a supplemental discovery response to the Plaintiff on July 20, 2007, a copy of which was attached to the Defendants' response.  [65-4]  Therefore, the undersigned finds that the Defendants have responded to the Plaintiff's discovery requests, and Plaintiff's motion to compel is denied on those grounds.

Secondly, the Plaintiff's motion to compel is denied because it appears to the court that all of the issues raised in the Plaintiff's motion to compel were addressed in detail by the undersigned at a hearing in Charleston on Tuesday, July 17, 2007, which the Plaintiff attended. After the undersigned conducted an extensive hearing on the Plaintiff's discovery, the Plaintiff's motion to compel was denied at the conclusion of that hearing.  [53]  The Plaintiff's motion to compel [63] simply addresses the same discovery issues as had been addressed at the July 17, 2007 hearing, and therefore it is denied.

### F.  The Plaintiff's Motion to Amend his Complaint [64]

On August 17, 2007, the Plaintiff filed a motion to amend his complaint to include certain exhibits.  Under Rule 15(a), the decision to grant leave to amend a complaint is

committed to this court's discretion.  *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9

L.Ed.2d 222 (1962).  Rule 15(a) stipulates that leave may be granted only "when justice so

requires."  Leave to amend under Rule 15(a) is not granted automatically.  *Deasy v. Hill*, 833

F.2d 38, 40 (4th Cir. 1987).  A  motion to amend the complaint under Rule 15(a) should be made

"as soon as the necessity for altering the pleading becomes apparent."  *Deasy*, 833 F.2d at 41.

Belated claims that change the character of litigation are not favored.  *Deasy*, 833 F.2d at 42.

A review of the Plaintiff's motion to amend reveals that it does not seek to change the

claims asserted in the complaint, but merely provides exhibits in support of the claims asserted in

his complaint.  Therefore, Plaintiff's motion to amend [64] is granted.

### G.  The Plaintiff's motion for summary judgment [21] and the Defendants' motion for summary judgment [66]

### 1.  The Standard of Review

In ruling on cross-motions for summary judgment, the Court must apply the same

standard as it does for individual summary judgment motions.  *Creech v. N.D.T. Indus., Inc.,* 815

F.Supp.165, 166 (D.S.C. 1993).  The analysis of the motions for summary judgment is governed

by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential to that party's case,
> and on which that party will bear the burden of proof at trial.  In such a situation there can
> be no "genuine issue as to any material fact," since a complete failure of proof concerning
> an essential element of the nonmoving party's case necessarily renders all other facts
> immaterial. Id. at 323; Fed.R.Civ.P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving

party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence. *Ross*, 759 F.3d at 364. Put another way, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4th Cir. 1987). Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167 (4th Cir. 1988).

Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court must enquire "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986).

## 2.  Discussion

The Plaintiff has moved for summary judgment on two grounds.  First, the Plaintiff

contends that he is entitled to summary judgment by default because the Defendants failed to

timely respond to the allegations of the Plaintiff's Complaint.  The court finds the first argument

without merit, finding that the Defendants timely answered the Plaintiff's complaint.  Second,

the Plaintiff contends that he is entitled to summary judgment on the grounds that the Defendants

failed to provide him with adequate medical care following the January 14, 2006 incident, when

he allegedly bit down on a piece of metal in his coleslaw and sustained a cracked tooth and an

injury to his gums.  The Defendants have moved for summary judgment, arguing that the

Plaintiff has failed to show that the Defendants' actions were sufficiently harmful to constitute a

deliberate indifference to serious medical needs.

Plaintiff has brought this action alleging he was denied adequate medical care and pain

medication after he fell down the stairs, resulting in muscle strain and numbness, in violation of

his civil rights pursuant to 42 U.S.C. § 1983.[6]  The United States Supreme Court has held: "To

---

[6]    42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42 (1988).

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for

vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3

(1979).

 In order to establish a violation of the Eighth Amendment for inadequate medical care, a

plaintiff must show that the defendants were deliberately indifferent to his serious medical needs.

*Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "To establish that

a health care provider's actions constitute deliberate indifference to a serious medical need, the

treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or

to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)

(citations omitted).  Deliberate indifference is a very high standard, and a showing of mere

negligence will not meet it.  *Grayson v. Peed*, 195 F.3d at 696 (*citing Estelle*, 429 U.S. at

105-06).  The test for deliberate indifference has two parts: first, whether the deprivation of

medical care was sufficiently serious (objective component) and second, whether there existed a

culpable state of mind (subjective component).  *See Wilson v. Seiter*, 501 U.S. 294, 298, 111

S.Ct. 2321, 115 L.Ed.2d 271 (1991).

 Furthermore, the type and amount of medical care an inmate receives is discretionary.

*See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga. 1994).  The mere fact that a prisoner may

---

believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988). It follows, then, that disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Indeed, a health care provider's method of diagnosis and choice of treatment of an inmate is not subject to judicial review. *Peterson v. Davis*, 551 F.Supp. 137, 146 (D.Md. 1982), *aff'd* 729 F.2d 1453 (4th Cir. 1984). Finally, in the context of alleged indifference to serious medical needs, in order to state a Section 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Finally, mere negligence or malpractice does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851. In other words, negligent medical treatment, even if shown to have occurred, is not a violation of constitutionally protected rights. *Estelle*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1977); *Johnson v. Quinones*, 145 F. 3d 164 (4th Cir. 1998).

Importantly, too, Section 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-03, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Thus, even if the Plaintiff were able to show that the Defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

### a.  Deliberate Indifference--Medical Personnel

Whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the plaintiff must allege a deprivation of medical care that was sufficiently serious (the objective component) and second, allege that there existed a "sufficiently culpable state of mind" by the defendant (the subjective component).  *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The first issue (the objective element) is whether the plaintiff has pled the deprivation of a serious medical need.  That element can be further broken down into two components:  (1) a serious medical need and (2) mistreatment or nontreatment of that need.

There is no clear definition of what constitutes a serious medical need.  However, the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems.  *Smith v. Preston*, 2007 WL 626191 at *3 (D.S.C. Feb. 23, 2007) (*citing Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'"  *Coppage v.*

*Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  The objective element also requires the plaintiff to prove that his serious medical need was not timely or properly treated.  *Smith v. Preston*, 2007 WL 626191 at *3.  Although expert exploration may be required to aid the jury in determining the threshold standard of medical care, a jury may find, without further expert testimony, that certain actions fell so far below enunciated standard that they constituted gross indifference actionable under Section 1983.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990).  Thus, summary judgment may not properly be based on an absence of a statement from an expert that the care given was grossly negligent when inferences drawn from the record could support such a finding.  *Id.*

The second element (the subjective component) requires a showing that the defendant's actions were wanton.  The standard for wantonness depends upon the circumstance of the case. *Smith v. Preston*, 2007 WL 626191 at *3 (*citing Wilson*, 501 U.S. at 302-03).  To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm.  *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).  Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).  A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position.  *See, id.* at 852-53 (deliberate indifference to cardiac condition); *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989) (denial of requests for medication); *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987) (obvious risk created by gunshot wound); *Sosebee v. Murphy*, 797 F.2d

179, 182-83 (4th Cir.1986) (condition escalated into obvious risk); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir.1978) (delay in treating an obviously broken arm). Whether a prison official had the requisite knowledge is a question of fact subject to demonstration by inference from circumstantial evidence, and a fact finder may conclude that prison official knew of substantial risk from the very fact that a risk was obvious. *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). A plaintiff must prove that the defendant was aware of facts showing a substantial risk of harm and also drew the inference that a substantial risk of harm existed. *See, Johnson v. Quinones*, 145 F.3d 164, 167-68 (4th Cir. 1998) (although doctors knew of symptoms, there was no evidence that doctors knew of the medical condition underlying the symptoms).

### Claims against Nurse Ravist

Although the record before the court does not contain an affidavit by Nurse Ravist, the Defendants have provided the court with the Affidavit of Jean Rutledge, R.N., who is employed as Health Care Authority with the SCDC. Ms. Rutledge has reviewed the Plaintiff's medical file and medical and dental encounter records, and a copy of the Plaintiff's medical file containing his medical and dental records were provided to the court. The Plaintiff's medical records indicate that the Plaintiff received immediate in-house medical care on January 14, 2006, at 12:29 p.m., after he complained about biting into a piece of metal at lunch. The medical records reflect that a piece of the Plaintiff's bottom right tooth, which had been filled, was broken.[7] Upon examination, there was no evidence of bleeding, no injury to the gum, and there was no

---

[7]        Rutledge Affidavit [66-3] at ¶ 3.

indication of any need for any immediate and/or emergent care.[8]  The Plaintiff was given

ibuprofen and/or Tylenol for discomfort, and it was noted that a dental referral would be made.[9]

The Plaintiff again was seen by medical on January 23, 2006, but did not complain about

his tooth or his gums.[10]  Significantly, although the Plaintiff had follow-up medical encounters

on January 31, February 2, February 11, February 21, February 23, February 24, February 27,

March 2, March 4, March 6, March 7, March 13, March 16, March 29, and April 5, for various

complaints, the medical records do not indicate that the Plaintiff complained about his tooth or

gums during these medical encounters.[11]  Plaintiff next complained about his cracked tooth on

April 6, April 14, and May 8, 2006.[12]

On May 24, 2006, the Plaintiff was seen by a dentist, who noted that the tooth in question

was decayed, and required a surgical extraction.[13]  On June 14, 2006, the Plaintiff complained to

the mental health clinic that he had to have his wisdom tooth pulled "due to metal that was

placed in his food by the officer."[14]  On July 5, 2006, the Plaintiff's tooth was surgically

extracted by an oral surgeon, and Tylenol #3 was prescribed for pain.[15]  The Plaintiff was seen in

---

[8]       Rutledge Affidavit [66-3] at ¶ 3.

[9]       Rutledge Affidavit [66-3] at ¶ 3.

[10]      *See* SCDC Medical Summary [66-5] at p. 7.

[11]      *See* SCDC Medical Summary [66-5] at pp. 1-7.

[12]      *See* SCDC Medical Summary [66-5] at p. 1 and [66-4] at pp. 12-13.

[13]      *See* SCDC Dental Health Records [66-5] at p. 13.

[14]      *See* SCDC Medical Summary [66-4] at p. 11.

[15]      *See* SCDC Dental Health Records [66-5] at p. 13 *and* SCDC Medical Summary [66-4] at p. 10.

medical for his tooth on July 11 and July 18,[16] and on July 19 he underwent a post-op check by

the dentist, at which time it was noted that the extraction site was "healing well–no swelling–soft

tissue has almost healed completely" although the Plaintiff said it was "achy."[17]  On July 27, at

three weeks post-op, the Plaintiff again was checked, and the dentist noted that the "soft tissue

almost totally closing [the extraction] site" and the Plaintiff was "healing well–minimal pain at

this time."[18]  On August 1, 2006, the Plaintiff again was examined by the dentist, who noted that

the gum tissue looked healthy, the site was healing well, and there was no swelling or drainage.[19]

 With respect to subsequent medical encounters, there is nothing in the records to indicate

that the Plaintiff expressed any complaints relating to the extraction of his tooth.  Here,

Plaintiff's Complaint, even liberally construed, fails to state a cognizable Section 1983 cause of

action because Plaintiff failed to allege any acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs.

 First, Plaintiff has failed to produce any evidence (apart from those allegations contained

in his pleadings) that he had a serious medical need.  It is a well-established principle that, after a

defendant makes a motion for summary judgment, the plaintiff bears the burden of making a

showing sufficient to establish the existence of every element essential to his case.  It follows,

---

[16] *See* SCDC Medical Summary [66-4] at p. 8.

[17] *See* SCDC Dental Health Records [66-5] at p. 12 *and* SCDC Medical Summary [66-4] at p. 8.

[18] *See* SCDC Dental Health Records [66-5] at p. 12 *and* SCDC Medical Summary [66-4] at p. 7.

[19] *See* SCDC Dental Health Records [66-5] at p. 11 *and* SCDC Medical Summary [66-4] at p. 6.

then, that the Defendants are under no obligation to present evidence disproving any elements of Plaintiff's claim. Indeed, Plaintiff must come forward with an affirmative showing more significant than conclusory and self-serving allegations in order to survive the Defendants' motions for summary judgment. *See, e.g.*, *Fuller v. County of Charleston*, 2006 WL 533381 at *5 (D.S.C. March 3, 2006) (Duffy, J.), *citing White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). the self-serving statements set forth throughout his pleadings will not permit summary judgment to be granted in his favor. *See, e.g.*, *Fuller v. County of Charleston*, 2006 WL 533381 (D.S.C. March 3, 2006) (Duffy, J.), *citing Larken v. Perkins*, 22 Fed. Appx. 114, *1 (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment.); *National Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) ("Marvin J. Barnes' self-serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment."); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56.").

Second, Plaintiff is unable to demonstrate any "deliberate indifference" to his health care needs. Plaintiff was seen by Nurse Ravist on the day he allegedly bit down on the piece of metal, and his tooth and gums were examined, and "no evidence of bleeding or injury [was] noted to gum."[20] He was instructed to take ibuprofen or Tylenol as needed, and he received

---

[20]    *See* SCDC Medical Summary [66-5] at p. 8.

follow-up care.[21]

In the present case, the Plaintiff contends that the Defendants did not timely respond to his requests for dental attention and such inaction caused his tooth to be extracted. However, as the Plaintiff concedes, Nurse Ravist examined him approximately two hours after the alleged incident, and instructed him to rinse his mouth and take ibuprofen.[22]  This appears to be the extent of Nurse Ravist's contact with the Plaintiff. Certainly, Nurse Ravist's actions do not constitute deliberate indifference. To the extent that the Plaintiff contends that Nurse Ravist was deliberately indifferent to his medical needs because she allegedly told the Plaintiff she "will make sure the dentist [saw] [him] on a[n] emergency call on 1/17/07[,]" (which apparently did not happen), this does not demonstrate that Nurse Ravist denied, or interfered with, or was indifferent to the Plaintiff's medical needs. Simply stated, the Plaintiff's allegations do not rise to the level of stating a violation of his Eighth Amendment rights.

Although Plaintiff may not have agreed with the type of treatment he received, it remains that the Plaintiff was provided treatment, medication was prescribed for the pain, and his tooth was extracted. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. The record indicates that the Plaintiff received appropriate care for his condition and there was no deliberate indifference to any serious health care need of the Plaintiff. He received examinations and underwent an extraction by an outside oral surgeon, and also received follow-up care. The Plaintiff has not provided any

---

[21]     *See* generally SCDC Medical Summary [66-5] and [66-4].

[22]     Complaint [1] at ¶ 3.

medical evidence or filed any affidavits that indicate any lack of treatment caused him to suffer

any life threatening medical problems.  Hence, the Plaintiff has failed to state any specifics

concerning this allegation.  To the extent the Plaintiff suggests he is entitled to summary

judgment on the grounds that he received inadequate medical care, or that the Defendants treated

his medical concerns with deliberate indifference, the Plaintiff has failed to carry his burden of

proof.  *See, e.g., Estelle*, 429 U.S. at 293; *Miltier*, 896 F.2d at 851 (for plaintiff to succeed on

medical indifference claim, the treatment "must be so grossly incompetent, inadequate or

excessive as to shock the conscience or to be intolerable to fundamental fairness . . . mere

negligence or malpractice does not violate the Eighth Amendment.").

Even if Plaintiff's claim could be construed as asserting medical malpractice, it also must

fail, because medical malpractice is not actionable under 42 U.S.C. § 1983.  *See Estelle v.*

*Gamble*, 429 U .S. at 106 ("Medical malpractice does not become a constitutional violation

merely because the victim is a prisoner.").

Based on the above, Plaintiff's claims of medical indifference or malpractice with respect

to Nurse Ravist must fail as a matter of law.

## 2.  Deliberate Indifference–Non-medical Personnel

The Fourth Circuit has held that to bring a medical treatment claim against non-medical

prison personnel, an inmate must show that such officials were personally involved with a denial

of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were

indifferent to the prison doctors' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990).

As a threshold matter, however, a civil rights plaintiff must allege the personal

involvement of a defendant to state a claim under 42 U.S.C. § 1983.  *See, e.g., Monell v.*

*Department of Social Svs.*, 436 U.S. 658, 691-92 (1978).  However, the Plaintiff's complaint sets

forth no evidence of personal involvement on the part of the Defendant Director Ozmint and

therefore the Plaintiff has not stated a claim against Director Ozmint.

      With respect to Warden Bazzel, the Plaintiff claims he wrote "five request[s]" to Warden

Bazzel, presumably about medical treatment, but Warden Bazzel did not respond.[23]  As

mentioned above, deliberate indifference exists when a prison official "knows of and disregards

an excessive risk to inmate health or safety; the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The Plaintiff has failed to show

that Warden Bazzel knew of the incident; even if Warden Bazzel did know of the incident, there

is no "excessive risk to inmate health or safety" under the facts presented.

      Next, the Plaintiff does not allege that Mr. Olson, the Food Service Director, was present

on the day of the incident.  Mr. Olson met with the Plaintiff about two weeks after the incident,

told him the piece of metal must have been in the cabbage box, and apologized to the Plaintiff.

The Plaintiff does not allege that Mr. Olson denied, or interfered with, or was indifferent to the

Plaintiff's medical needs, and therefore the Plaintiff's claims of medical indifference against him

must fail.

### ***Respondeat Superior***

      Because the record does not show any medical indifference by any of the Defendants, it

---

[23]    Complaint [1] at ¶ 11.

follows that there is no actionable federal legal claim for which Director Ozmint or Warden Bazzel could be "responsible for" even if Plaintiff's allegations were--which they are not-- sufficient to overcome the well-settled rule generally precluding vicarious responsibility claims in Section 1983 cases.  *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (the doctrine of *respondeat superior*, also known as vicarious liability, is generally inapplicable to Section 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action); *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir.1982) (same). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).  However, there are no allegations contained in the Complaint in this case that would support application of the *Slakan* exception in this case even if medical indifference by any treatment providers were adequately alleged.

## Supervisory Liability

To the extent the Plaintiff may rely on the doctrine of supervisory liability with respect Director Ozmint or Warden Bazzel, the Plaintiff has failed to make any showing of any facts that would support the imposition of liability.  "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  *Miltier*, 896 F.2d at 854 (citation omitted).  The plaintiff

must demonstrate that he faced a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id.*, *see also Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.), *cert. denied*, 502 U.S. 828 (1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). The Plaintiff has made no such demonstration here.

## Qualified Immunity

The Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity shields government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which [a] reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *DiMeglio v. Haines*, 45 F.3d 790, 794 (4th Cir. 1995). In *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials. This immunity "protects law enforcement officials from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) (*quoting Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

Qualified immunity shields a governmental official from liability for civil monetary damages if the

> officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  In determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.  Moreover, the manner in which this clearly established right applies to the actions of the official must also be apparent.  As such, if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal quotations, citations, and modification omitted), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson v. Lane*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).  The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right."  *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist."  *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).  Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right."  *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

In analyzing whether the Defendants are entitled to qualified immunity, the undersigned first must determine whether the Plaintiff has properly pled a violation of his Eighth Amendment right. The general Eighth Amendment right at issue was clearly established at the time of the events alleged in the Complaint–in the longstanding principle that a prisoner may not be subjected to deliberate indifference of a serious medical need. *See Estelle*, 429 U.S. at 104. The Plaintiff contends in his Complaint that he was denied adequate dental care after he bit into a piece of metal in his coleslaw. Assuming this allegation to be true, it cannot be said to be a violation of the Plaintiff's constitutional rights. The Plaintiff does not allege that any of the Defendants deliberately withheld medication or treatment, or interfered with his treatment, nor does he allege that any of the Defendants engaged in any conduct which could be deemed to "shock the conscience." As stated above, the Plaintiff, at most, disagreed with the treatment he received. Consequently, the Defendants are entitled to qualified immunity.

### **This Action Should be Deemed a Strike**

Lastly, Section 804 of the PLRA, which amended § 1915(g), reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.28 U.S.C. § 1915(g).

The instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA. Therefore, it is recommended that it be counted as a "strike" against the Plaintiff. *See* 28 U.S.C. § 1915A.

**<u>RECOMMENDATION</u>**

Based upon the foregoing, it is recommended that the Defendants' motion to dismiss **[9] should be denied**; the Plaintiff's motion for a physical and mental examination **[20] should be denied**; the Plaintiff's motion for summary judgment **[21] should be denied;** and the Plaintiff's Motion to Amend **[64] should be granted**. In addition, the Plaintiff's motion for injunctive relief **[19] is moot**; the Plaintiff's motion to have defendants restrained from handling legal mail **[39] is moot**, and the Plaintiff's motion to compel **[63] is moot**. Finally, it is recommended that the Defendants' motion for summary judgment **[66] should be granted, and that a strike be imposed on the** Plaintiff pursuant to 28 U.S.C. § 1915A.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

September 14, 2007
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).